**Jane DOE, Appellee**

v.

**WYOMING VALLEY HEALTH CARE SYSTEM, INC., Appellant.**

Superior Court of Pennsylvania.

Argued April 28, 2009.

Filed Dec. 18, 2009.

Reargument Denied Feb. 25, 2010.

Kimberly A. Boyer–Cohen, Philadelphia, for appellant.

Kimberly D. Borland, Wilkes–Barre, for appellee.

BEFORE: ORIE MELVIN, GANTMAN, and CLELAND, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Wyoming Valley Health Care System, Inc., appeals from the judgment entered in the Luzerne County Court of Common Pleas in favor of Appellee, Jane Doe,[1] following the denial of Appellant's motion for post-trial relief. We reverse and remand.

¶ 2 The relevant facts and procedural history of this case are as follows. In the spring of 1996, Appellee became a member of an organizing committee to represent medical/surgical nurses as a collective bargaining unit in matters relative to their employment with Appellant. Between May and July 1996, Appellant held several

---

1. Appellee uses the pseudonym "Jane Doe" to protect her identity.

meetings, known as "round the clock" meetings, concerning the potential unionization of the nurses. In May 1996, Appellee attended one such meeting held by Mary Beth Komnath, the Vice President of Patient Care Services for Appellant. At the meeting, Appellee raised her hand on several occasions to correct what she felt were inaccuracies on the part of Ms. Komnath regarding unionization. Following the meeting, Appellee spoke briefly with Ms. Komnath about patient safety and staffing issues.

¶ 3 In July 1996, Appellant presented testimony/evidence concerning unionization before the National Labor Relations Board ("NLRB") over the course of several hearings. During the hearings, the NLRB focused, *inter alia,* on whether nurses who held the position of Clinical Care Coordinator ("CCC") were "supervisors," as defined by the National Labor Relations Act ("NLRA"), and should be excluded from the proposed bargaining unit. Appellant's position was that CCC's were supervisors under the NLRA. To show that CCC's functioned in a supervisory role, Appellant assembled written examples of disciplinary actions, instructions, written reprimands, and/or anecdotal notes independently initiated by CCC's in conjunction with their role in supervising staff nurses. Ms. Komnath instructed the directors of various nursing departments to identify and collect the requested documents. Ms. Komnath did not decide which examples to present before the NLRB. Rather, Appellant forwarded the assembled documents to legal counsel, who independently determined which documents to present at the hearing.

¶ 4 During the NLRB hearing on July 3, 1996, Ms. Komnath appeared as a witness for Appellant to give testimony/evidence that CCC's were supervisory employees.[2] Appellant's counsel presented Ms. Komnath with a series of disciplinary records, written reprimands, and anecdotal records pertaining to various members of Appellant's staff and questioned Ms. Komnath on the content of those documents. Prior to testifying, Ms. Komnath did not review the documents Appellant's counsel had chosen to present before the NLRB.

¶ 5 Appellant's counsel introduced seventeen (17) documents for Ms. Komnath's comment. Significantly, opposing counsel did not request that Appellant's counsel redact the names of the employees appearing on the documents. One of the documents counsel presented to Ms. Komnath related to Appellee's job performance. Specifically, this document, labeled "Anecdotal Record," revealed that on March 5, 1996, Appellee failed to transcribe a patient's vital signs. Appellee was not present at the July 3, 1996 hearing. The following day, a co-worker allegedly told Appellee that Appellant had used a document from her personnel file at the NLRB hearing. On August 2, 1996, Appellee filed a complaint against Appellant claiming intentional infliction of emotional distress[3] and invasion of privacy due to Appellant's dissemination of a document from her confidential personnel file at the July 3rd hearing before the NLRB. Appellee's complaint also asserted that on July 4, 1996, a local newspaper published an article mentioning Appellant's use of confidential personnel files at the NLRB hearing.[4] Appellee sought both compensatory

---

2. The parties do not dispute that Ms. Komnath acted as Appellant's agent during all times relevant to the NLRB proceeding.

3. The court dismissed Appellee's claim for intentional infliction of emotional distress.

The record does not make clear when this dismissal occurred.

4. Appellee admits the newspaper article did not mention the names of any individuals whose personnel files were reviewed at the

and punitive damages. On August 30, 1996, Appellant filed preliminary objections in the nature of a demurrer. On November 18, 1996, the court overruled Appellant's objections.[5] Following discovery, on August 21, 2003, Appellant moved for summary judgment. On February 6, 2004, the court denied Appellant's motion. In each of the relevant pleadings, Appellant asserted/argued the affirmative defense of absolute privilege.

¶ 6 Trial commenced on January 28, 2008. At the close of Appellee's case-in-chief, Appellant moved for a compulsory non-suit, again asserting, *inter alia*, the disclosure at the NLRB hearing concerning Appellee was absolutely privileged because the disclosure took place during a judicial proceeding. After hearing argument from both parties, the court denied Appellant's motion. The court then permitted both parties to introduce additional evidence in the form of exhibits. Thereafter, Appellant moved for a directed verdict and to preclude an instruction on punitive damages. Appellant's motion renewed the argument concerning absolute privilege. Subsequently, the court denied Appellant's motions. The court, however, stated: "But if you get an award on punitive damages I'm revisiting that." (N.T., 1/29/08, at 102; R.R. at 37a).

¶ 7 On January 31, 2008, the jury returned a verdict in favor of Appellee in the amount of $400,000.00 (compensatory damages totaling $50,000.00 and punitive damages totaling $350,000.00). On February 8, 2008, Appellant filed a timely motion for post-trial relief, seeking judgment notwithstanding the verdict ("JNOV") or, alternatively, a new trial or *remittitur*. On June 30, 2008, the court denied Appellant's mo-

tion. The court entered judgment on the verdict in favor of Appellee on July 25, 2008. On July 29, 2008, Appellant timely filed its notice of appeal. The court did not order Appellant to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant did not file one.

¶ 8 Appellant raises the following issues for our review:

> BECAUSE [APPELLEE] FAILED TO ADDUCE SUFFICIENT EVIDENCE TO SUSTAIN A *PRIMA FACIE* CASE THAT [APPELLANT] INVADED HER PRIVACY, WHETHER THE [TRIAL] COURT ERRED BY FAILING TO GRANT [JNOV] OR A NEW TRIAL IN FAVOR OF [APPELLANT]?

> BECAUSE THE EVIDENCE DEVELOPED AT TRIAL DOES NOT DEMONSTRATE THE LEVEL OF OUTRAGEOUSNESS NECESSARY TO SUPPORT AN AWARD OF PUNITIVE DAMAGES, WHETHER THE TRIAL COURT ERRED IN ALLOWING THE ISSUE OF PUNITIVE DAMAGES TO BE SUBMITTED TO THE JURY IN THE FIRST INSTANCE AND IN FAILING TO GRANT [JNOV], OR AT A MINIMUM A NEW TRIAL TO [APPELLANT]?

> BECAUSE THE JURY'S VERDICT WAS PLAINLY EXCESSIVE AND SUBSTANTIALLY DEVIATED FROM THE TRIAL EVIDENCE, WHETHER [APPELLANT] IS ENTITLED TO A SUBSTANTIAL *REMITTITUR* OF THE JURY'S MANIFEST-

---

hearing. Appellee further concedes no one has ever linked her to the newspaper article. (N.T. Trial, 1/29/08, at 41, 71; R.R. at 21a, 29a).

5. Despite her complaint, Appellee continued to work for Appellant. Sometime in 1997, Appellee voluntarily left her job.

LY EXCESSIVE VERDICT OR TO A NEW TRIAL ON DAMAGES?

(Appellant's Brief at 5).

■■■ ¶ 9 Our standard of review of a trial court's denial of a motion for JNOV is as follows:

> Whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Holt v. Navarro,* 932 A.2d 915, 919 (Pa.Super.2007), *appeal denied,* 597 Pa. 717, 951 A.2d 1164 (2008) (quoting *Ferrer v. Trustees of University of Pennsylvania,* 573 Pa. 310, 317–18, 825 A.2d 591, 595 (2002) (internal citations omitted)). Furthermore:

> There are two bases upon which a [JNOV] can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Holt, supra* (quoting *Schindler v. Sofamor, Inc.,* 774 A.2d 765, 771 (Pa.Super.2001), *appeal denied,* 567 Pa. 727, 786 A.2d 989 (2001) (internal citations omitted)). "When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict.... Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact.... A JNOV should be entered only in a clear case." *Holt, supra* (quoting *Advanced Telephone Systems, Inc. v. Com–Net Professional Mobile Radio, LLC,* 846 A.2d 1264, 1279 (Pa.Super.2004), *appeal denied,* 580 Pa. 687, 859 A.2d 767 (2004)).

¶ 10 For purposes of disposition, we consider Appellant's issues together. Appellant argues Appellee did not attend the NLRB hearing on July 3, 1996 and does not know how many people were present in the courtroom that day. Appellant asserts the local newspaper article discussing the NLRB hearing at issue did not mention Appellee's name. Appellant maintains that no one ever linked Appellee to the newspaper article. Appellant claims Appellee failed to establish the "publicity" element necessary to succeed in her invasion of privacy action. Appellant also avers its presentation of Appellee's anecdotal record at the hearing was necessary for the NLRB's determination. Appellant emphasizes the use of such a record is consistent with standard procedures before the NLRB. Appellant suggests the report contained "true" [6] information. Be-

---

**6.** In her testimony at trial, Appellee stated that the anecdotal record does not accurately reflect what occurred on March 5, 1996. Appellee insisted that she was unable to transcribe the patient's vital signs every thirty (30) minutes, as ordered, because she was attending another patient for two hours, who was in more critical condition. Despite her assertions, Appellee's signature appears on the bottom of the anecdotal note. Further, Appellee

cause the report did not present a major misrepresentation of Appellee's character, history, activities or beliefs, Appellee also failed to prove the disclosure of her record would be highly offensive to a reasonable person. Appellant further submits the disclosure at issue took place during a judicial proceeding. Appellant insists absolute privilege attached in this proceeding because the disclosure was related to the issues before the NLRB. Appellant concludes the trial court erred as a matter of law in denying Appellant's motion for JNOV.

¶ 11 Additionally, Appellant claims Ms. Komnath did not know Appellee was a member of the union organizing committee until Appellee filed her lawsuit. Appellant alleges employee personnel file information is often used in representation hearings. Appellant declares Appellee failed to demonstrate Appellant's conduct was malicious, wanton, reckless, willful or oppressive, and the court's instruction to the jury on punitive damages was improper. Appellant concludes the court erred as a matter of law in instructing the jury on punitive damages and the jury's award should be reduced accordingly. We agree with Appellant's contentions.

■ ¶ 12 Under Pennsylvania law, invasion of privacy involves four separate torts: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness for commercial purposes; (3) publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.[7] *Burger v. Blair Medical Associates, Inc.*, 600 Pa. 194, 964 A.2d 374

(2009) (citing Restatement (Second) of Torts §§ 625B-E). The Restatement (Second) of Torts sets forth the elements for an invasion of privacy claim under (3) and (4) as follows:

### § 652D. Publicity Given To Private Life

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

\*     \*     \*

### § 652E. Publicity Placing Person In False Light

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of [her] privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts §§ 652D-E. Under each subsection, "publicity" means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at

---

admitted in her testimony that she was aware Appellant had a "Problem Resolution Policy" in place to dispute such reports. Appellee, however, failed to contest the contents of the anecdotal record. (N.T., 1/29/08, at 56–57; R.R. at 25a).

**7.** The parties agree Appellee could pursue her cause of action only under subsection (3) or (4), given the facts of this case.

§ 652D, *Comment A;* § 652E, *Comment A.* "Thus, it is not an invasion of the right of privacy ... to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* The plaintiff must also establish the publicity given to her is such that a reasonable person would feel justified in feeling seriously aggrieved by it. *Id.* at § 652D, *Comment C;* § 652E, *Comment C.*

¶ 13 Additionally, under Section 652D, "[w]hen the matter to which publicity is given is true, it is not enough that the publicity would be highly offensive to a reasonable person.... When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy." *Id.* at § 652D, *Comment D.* Furthermore, under Section 652E, it is essential that the matter published concerning the plaintiff is false. *Id.* at § 652E, *Comment A.* The publication must also be a major misrepresentation of a person's character, history, activities or beliefs that could reasonably be expected to cause a reasonable person to take serious offense. *Id.* § 652E, *Comment C.*

¶ 14 The Restatement (Second) of Torts outlines absolute privileges which apply as defenses in an invasion of privacy action. *See id.* at §§ 583–592; § 652F, *Comment A* (extending absolute privileges as defenses in defamatory actions to invasion of privacy claims). Section 588 sets forth the absolute privilege applicable in a judicial proceeding as follows:

§ 588. **Witnesses In Judicial Proceedings**

A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which [she] is testifying, **if it has some relation to the proceeding.**

*Id.* at § 588 (emphasis added). *See Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53 (1971) (explaining statements by party, witness, counsel or court made during any stage of judicial proceedings are absolutely privileged); *Milliner v. Enck,* 709 A.2d 417 (Pa.Super.1998) (stating communication is absolutely privileged when published prior to judicial proceeding as long as communication is somehow related to subject matter of litigation). Additionally, privileged testimony need not be material to the issues before the court, as long as it has some reference to the subject of the litigation. Restatement (Second) of Torts § 588, *Comment C.* "Where the question of the relevancy and [pertinence] of matters communicated is to be inquired into, all reasonable doubt must be resolved in favor of relevancy and pertinency." *Smith v. Griffiths,* 327 Pa.Super. 418, 476 A.2d 22, 25 (1984). The privilege exists to encourage all persons involved in the proceedings "to speak frankly and argue freely without danger or concern that they may be required to defend their statements in a later defamation action." *Id.* at 24.

¶ 15 Judicial proceedings include all proceedings in which an officer or tribunal exercises official functions. Restatement (Second) of Torts § 588, *Comment D.* Our case law applies privilege to "quasi-judicial" proceedings as well. *See Kennedy v. Upper Milford Tp. Zoning Hearing Bd.,* 575 Pa. 105, 834 A.2d 1104 (2003) (stating no reason appears why process of quasi-judicial decision-making is any less deserving of protection than judicial or administrative processes); *Milliner, supra* (explaining Pennsylvania case law has attached absolute privilege to proceedings that are judicial or quasi-judicial in character); *Smith, supra* (holding letters written by counsel on behalf of client to "quasi-judicial" officer appointed to hear certain

divorce issues were absolutely privileged as pertinent to proceeding); *Urbano v. Meneses*, 288 Pa.Super. 103, 431 A.2d 308 (1981) (discussing zoning hearing board as quasi-judicial tribunal which enjoys absolute immunity).

¶ 16 Whether a privilege exists/applies in a given context is a question of law for the court. *Smith, supra* at 25. Whether the privilege has been abused, however, is a question of fact for the jury. *Agriss v. Roadway Exp., Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 463 (1984).

¶ 17 Instantly, Appellant raised the defense of absolute privilege at every critical stage in the proceedings. (*See* Appellant's Answer and New Matter, filed 12/26/96, at 8–9; Appellant's Motion for Summary Judgment, filed 8/21/03, at 8–9; N.T., 1/29/08, at 92 (Appellant's motion for compulsory non-suit); *Id.* at 100 (Appellant's motion for directed verdict); Appellant's Motion for Post-trial Relief, filed 2/8/08, at 3.) At each stage, however, the court failed to make the threshold determination of whether the absolute privilege applied. *See Agriss, supra; Smith, supra.* Rather, the court submitted that threshold determination of privilege to the jury as follows:

> Based upon the foregoing, the only issues for you to decide in accordance with the law as I am about to give it to you are: Did [Appellant] invade the privacy of [Appellee] and if so, was the invasion of [Appellee's] privacy privileged; and what if any, damages were sustained by [Appellee?]

(N.T. Trial, 1/30/08, at 2–3). The court further instructed the jury on privilege as follows:

> Under the law of this Commonwealth, one is privileged to give publicity to

matters concerning the private life of another that would otherwise constitute an invasion of privacy where the disclosure occurred at a hearing before a judicial or quasi judicial forum, and the disclosure was material and pertinent to the issues to be decided by that forum. **It is for you, the [j]ury, to decide whether the disclosure was material and pertinent, and was therefore ... privileged information.** If you find [Appellee's] privacy was invaded, and that invasion of privacy was not privileged, [Appellee] is entitled to be fairly and adequately compensated for any injuries you find she suffered as a result of this invasion of her privacy.

(*Id.* at 5–6) (emphasis added). Significantly, the court did not instruct the jury on abuse of privilege. *See Agriss, supra; Smith, supra.*[8]

■ ¶ 18 The court should have decided, as a prefatory question of law, whether absolute privilege applied to the facts of this case. *See id.* Instead, the court abrogated its duty and gave that threshold determination to the jury to decide. *Id.* The task for the jury was to determine only whether there was an abuse of privilege, not whether privilege applied in the first instance. *Id.*

■ ¶ 19 Ms. Komnath testified as a witness for Appellant before the NLRB. A hearing before the NLRB constitutes a judicial proceeding, or at least a quasi-judicial proceeding. The record also makes clear Ms. Komnath's discussion of anecdotal records was related to the issue of whether CCC's were "supervisory" personnel. *See* Restatement (Second) of Torts § 588, *Comment C; Smith, supra.* Therefore, Ms. Komnath's statements under

8. The verdict slip provided to the jury also asked, in pertinent part: "Question 2: If [Appellant] invaded the privacy of [Appellee], was

the invasion of [Appellee's] privacy privileged." (*See* Verdict Slip, 1/31/08, at 1.)

these circumstances were absolutely privileged as a matter of law. *See* Restatement (Second) of Torts § 588; § 652F, *Comment A*, related; *Binder, supra; Milliner, supra.* The court erred as a matter of law when it submitted the threshold determination of privilege to the jury to decide. *See Holt, supra.*

¶ 20 Moreover, at the July 3rd hearing, Appellant's counsel presented seventeen (17) documents for Ms. Komnath's comment.[9] Appellee failed to present any evidence that Ms. Komnath knew Appellee was a member of the organizing committee supporting unionization. Additionally, Ms. Komnath did not personally assemble the employee files for counsel's review. Ms. Komnath also did not choose which examples from those files to present before the NLRB. Prior to testifying, Ms. Komnath did not review the documents Appellant's counsel had chosen to present before the NLRB. Further, Appellant initially introduced Appellee's document before the NLRB merely by an exhibit number, not by Appellee's name. The record makes clear the purpose of the disclosure was genuine and related to the NLRB proceedings. There is no evidence of record to show the disclosure was made to malign Appellee, directly or indirectly. In essence, our review of the record shows no evidence of abuse of privilege. Thus, the jury had no issue to consider. *See Agriss, supra; Smith, supra.*

¶ 21 With respect to Appellant's damages issue, punitive damages are an "extreme remedy" available only in the most exceptional circumstances. *Phillips v. Cricket Lighters,* 584 Pa. 179, 188, 883 A.2d 439, 445 (2005). Additionally,

Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others. A defendant acts recklessly when his conduct creates an unreasonable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent. Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. Rather, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to intentional, willful, wanton or reckless conduct. . . .

*Id.* at 188–89, 883 A.2d at 445–46. Initially, the court must determine whether the plaintiff has presented sufficient evidence to support a punitive damage award before submitting the issue of such damages to the jury. *Rizzo v. Michener,* 401 Pa.Super. 47, 584 A.2d 973 (1990), *appeal denied,* 528 Pa. 613, 596 A.2d 159 (1991).

¶ 22 In the instant case, the court admitted it had "real problems with the punitives." (*See* N.T., 1/29/08, at 97; R.R. at 35a.) After the court denied Appellant's motion for a directed verdict, the court further stated: "But if you get an award on punitive damages I'm revisiting that." (*See id.* at 102; R.R. at 37a.) Nevertheless, in denying Appellant's motion for post-trial relief, the court reasoned:

Whether this [c]ourt would have awarded punitive damages is irrelevant.

9. Appellee's complaint asserted, "[Appellee] was the only nurse specifically and clearly identified as committing an infraction" and "No derogatory information or disciplinary information was discussed by name about a nurse not on the organizing committee." (*See* Complaint, filed 8/2/96, at 3.) At trial, however, Appellee conceded those allegations were erroneous. (*See* N.T., 1/29/08, at 52; R.R. at 24a.)

A trial judge may not declare a punitive damage award excessive simply because he would have awarded a lesser amount. Therefore, if the jury believed from the evidence presented that [Appellant's] conduct was willful, and that it came about because of [Appellee's] union activity or that [Appellant's] conduct was recklessly indifferent to [Appellee's] rights, then the punitive damage award was supported by the evidence, not excessive, and, again, not shocking to this [c]ourt's sense of justice.

(Opinion Supporting Denial of Post–Trial Relief, filed June 30, 2008, at 11–12). We respectfully disagree with the court's analysis as the record does not support it.

¶ 23 Here, Ms. Komnath testified that she did not know Appellee was a member of the union organizing committee until Appellee filed her lawsuit. (*See* N.T., 1/29/08, at 88; R.R. at 86a.) Ms. Komnath did not personally choose the personnel files for Appellant and did not determine which documents to use at the NLRB hearing. In fact, Ms. Komnath did not even know which files Appellant's counsel would present before the NLRB until she took the witness stand at the July 3, 1996 hearing. The record makes clear the purpose of the disclosure was genuine and related to the NLRB proceedings. There is no evidence of record to show the disclosure was made to malign Appellee, directly or indirectly. Thus, Appellee did not present evidence of intentional, willful, wanton or reckless conduct to support punitive damages. *See Phillips, supra.* Appellant's conduct at the NLRB hearing was not evil or outrageous, under relevant Pennsylvania law, and did not justify a punitive damages award. *See id.* As such, the court improperly submitted the issue of punitive damages to the jury. *See Holt, supra; Rizzo, supra.* Accordingly, we reverse the order denying Appellant's

motion for JNOV, vacate the judgment, and remand for entry of JNOV in favor of Appellant.

¶ 24 Judgment reversed; case remanded for entry of JNOV in favor of Appellant. Jurisdiction is relinquished.