883 A.2d 439

Gwendolyn PHILLIPS, Administratrix of the Estate of Robyn Jorjean Williams, Deceased; Gwendolyn Phillips, Administratrix of the Estate of Jerome I. Campbell, Deceased; Gwendolyn Phillips, Administratrix of the Estate of Alphonso Crawford, Deceased; Neil Curtis Williams, A Minor by his Guardian and Next Friend, Gwendolyn Phillips,

v.

CRICKET LIGHTERS, Swedish Match, S.A.; Pinkerton Tobacco Company; Pinkerton Group, Inc.; Pinkerton Group, Inc., t/a and d/b/a Cricket USA; Cricket S.A.; Poppell, B.V.; Wilkinson Sword/Cricket, Inc.; Wilkinson Sword, Inc.; NDC Corporation and National Development Corporation t/a Shenango Park Associates; NDC Asset Management, Inc.; Regional Sales, Inc.; Universal Match Company a/k/a Universal Match Corporation; Swedish Match, A.B.; Cricket B.V; Inter–Match, S.A., Feudor, S.A.; Schick Netherland, B.V.; Warner–Lambert Holland, B.V.

Appeal of Swedish Match, S.A.; Pinkerton Tobacco Company; Pinkerton Group, Inc., Pinkerton Group, Inc. t/a and d/b/a Cricket USA; Cricket, S.A.; Poppell, B.V.; Wilkinson Sword/Cricket, Inc.; Wilkinson Sword, Inc; Universal Match Company a/k/a Universal Match Corporation; Swedish Match, A.B.; Cricket, B.V.; Inter–Match, S.A.; and Feudor, S.A.

Supreme Court of Pennsylvania.

Argued March 7, 2005.

Decided Sept. 28, 2005.

182

Louis C. Long, Pittsburgh, for Swedish Match, et al.

Brian Thornton Must, for Zippo Manufacturing Company.

Richard A. Kraemer, Philadelphia, for Bic.

Edward Michael Koch, Philadelphia, for Pennsylvania Defense Institute.

Henry E. Sewinsky, Sharon, John M. Humphrey, for Gwendolyn Phillips, et al.

James Michael Beck, Philadelphia, for Product Liability Advisory Council, Inc.

Paul A. Lauricella, for Pennsylvania Trial Lawyers Association.

Before: CAPPY, C.J., NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ,

## OPINION

Chief Justice CAPPY.

This is an appeal by allowance. We are asked to resolve whether the Superior Court properly reversed the trial court's entry of summary judgment, thus allowing the breach of warranty and punitive damages claims to proceed in this matter. For the reasons that follow, we now reverse.

On the night of November 30, 1993, two year old Jerome Campbell ("Jerome") retrieved a Cricket disposable butane cigarette lighter which belonged to his mother, Robyn Williams ("Robyn"). It is uncontested that this butane lighter lacked any child-resistant feature. Jerome was able to use the lighter to ignite some linens. The fire that resulted killed Jerome, Robyn, and another minor child of Robyn's; one minor child, Neil Williams ("Neil"), survived.

Gwendolyn Phillips ("Appellee"), as administratrix of the estates of the three decedents and as guardian of Neil, instituted this action against the manufacturers and distributors of the Cricket lighter (collectively, "Appellants").[1] In her complaint, Appellee raised, *inter alia*, claims of design defect sounding in both strict liability and negligence, negligent infliction of emotional distress, breach of the implied warranty

---

1. Appellee's complaint also named as defendants the owners and managers of the apartment building in which Robyn resided with her family (collectively referred to as the "NDC defendants"). Appellee ultimately negotiated a release with the NDC defendants; the NDC defendants are not involved in this appeal.

of merchantability, and punitive damages. These claims were all predicated on Appellee's allegations that Appellants should have manufactured and distributed a lighter that had child-proof features.

Appellants filed for summary judgment. The trial court found in favor of Appellants, and dismissed all claims against them.

On appeal, Appellee presented five issues to the Superior Court, claiming that summary judgment should not have been entered on her breach of warranty, punitive damages, negligent infliction of emotional distress, or design defect claims sounding in strict liability or negligence. The Superior Court reversed the trial court's entry of summary judgment on all five of these claims.

Appellants then appealed to this court, and we granted allocatur. Following argument, we affirmed in part, reversed in part, and vacated in part the order of the Superior Court. *See Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000 (2003) (*"Phillips I"*). As fully detailed in our *Phillips I* decision, we affirmed that portion of the Superior Court's order reinstating Appellee's negligence and negligent infliction of emotional distress claims. We reversed that portion of the Superior Court's order reinstating the strict liability design defect claim, finding that Appellee could not make out a strict liability claim in this matter as Jerome, a two-year-old child, was not the "intended user" of the lighter.[2] We also vacated that portion of the Superior Court's order regarding the breach of warranty claim and reversed the Superior Court with regard to its decision on the punitive damages issue; we

---

2. In *Phillips I*, the lead opinion was written by this author. Mr. Justice Saylor authored a concurring opinion in which Messrs. Justice Castille and Eakin joined. While Mr. Justice Saylor expressed grave concerns over the lead opinion's continued adherence to the *Restatement (Second) of Torts* definition of a strict liability cause of action, and detailed why he preferred the *Restatement (Third) of Torts'* position regarding strict liability, he joined "the majority disposition on the strict liability ... claim[] under present law." *Phillips I*, 841 A.2d at 1012 (Saylor, J., concurring).

remanded this matter to the Superior Court for it to reconsider the punitive damages and breach of warranty claims.

On remand, the Superior Court once again reversed the trial court's entry of summary judgment in favor of Appellants with regard to the breach of warranty and punitive damages claims. *Phillips v. Cricket Lighters*, 852 A.2d 365 (2004). As to the breach of warranty claim, the Superior Court concluded that a reasonable jury could find that the Cricket lighter was not merchantable and thus the trial court erred in entering summary judgment in favor of Appellants on the breach of warranty claim. The Superior Court emphasized that the fact that a two-year old child was an unintended user of the lighter was not fatal to the warranty claim. The Superior Court stated that per 13 Pa.C.S. § 2318, implied breach of warranty protections extend to all members of the buyer's household with no limitations being placed on whether the person who had used the product was the intended user.

With regard to the punitive damages claim, the Superior Court found that Appellee had presented evidence sufficient to create a jury question as to whether Appellants' actions exhibited reckless indifference to the interests of others. It therefore found that the trial court erred when it entered summary judgment on this claim.

Appellants filed a petition for allowance of appeal. We granted allocatur. For the reasons that follow, we now reverse.

In reviewing this matter, we must determine whether the Superior Court correctly reversed the trial court's entry of summary judgment. "[A]n appellate court may reverse the entry of summary judgment only where it finds that the trial court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law." *Phillips I*, 841 A.2d at 1005 (citing *Pappas v. Asbel*, 564 Pa. 407, 768 A.2d 1089 (2001)). In conducting this analysis, we are directed to resolve "all doubts as to the existence of a genuine issue of material fact ... against the moving party." *Ertel v.*

*Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038, 1041 (1996). As the questions raised in this matter are solely ones of law, our review is *de novo*.

The first issue which we will address is the Superior Court's determination that the trial court erred in granting summary judgment on Appellee's breach of warranty claim. The statute defining implied warranty of merchantability states that in order for goods to be considered "merchantable", they

■ must be at least such as:

(1) pass without objection in the trade under the contract description;

(2) in the case of fungible goods, are of fair average quality within the description;

(3) are fit for the ordinary purposes for which such goods are used;

(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

13 Pa.C.S. § 2314. In the matter *sub judice*, the focus is on whether Appellee can establish that the Cricket lighter was not fit for the ordinary purposes for which such goods are used. *See* 13 Pa.C.S. § 2314(3). In analyzing this question, we note that "[t]he concept of merchantability does not require that the goods be the best quality or the best obtainable but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed . . . ." *Gall by Gall v. Allegheny County Health Dep't*, 521 Pa. 68, 555 A.2d 786, 789–90 (1989) (internal citations omitted).

■ Appellee argues that she can establish that the Cricket lighter was unmerchantable. Echoing the analysis of the Superior Court below, she states that 13 Pa.C.S. § 2318

dictates that she can recover on her § 2314 claim. Section 2318 states, in pertinent part, that the warranty pursuant to § 2314 "extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Appellee reasons that as Jerome was a family member of Robyn, the purchaser of the Cricket lighter, and as it was reasonable for Appellants to anticipate that a small child such as Jerome would use the Cricket lighter, then a breach of warranty claim will lie against Appellants.

Appellee's analysis is inapt. Section 2318 does not define when a breach of warranty has occurred. Rather, by its plain language,[3] it spells out who may recover when a breach of warranty under § 2314 has indeed occurred. 13 Pa.C.S. § 2318 (stating that the warranty protections extends to a certain class of people "who [are] injured in person *by breach of the warranty.*") This plain reading of the statute is bolstered by the official Comments to section 2318;[4] those Comments state that the purpose of this provision was to make clear that the ancient concepts of privity would not bar a modern beach of warranty claim. In essence, § 2318 was adopted to broaden the class of people who could recover when a product is found to be unmerchantable. This section does not, however, expand upon or in any fashion provide further elucidation of what constitutes a breach of warranty.

To answer this question, we turn again to § 2314's requirement that to be merchantable, the goods must be fit for their "ordinary purposes". The word "ordinary" is readily understood to mean "common" or "average". *See* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 925 (1981). In the context of this matter, it is apparent that the ordinary purpose of the Cricket lighter was to allow an adult user to

3. In construing a statute, we are to follow the plain meaning of the provision's language when the words are free from ambiguity. *See* 1 Pa.C.S. § 1921.

4. Our rules of statutory construction allow us to consult Comments in our construction or application of a statute. *See* 1 Pa.C.S. § 1939.

produce a flame.[5] Its ordinary purpose certainly was not to be a two year old child's plaything. The fact that the product was tragically misused in such a way does not alter the ordinary purpose of the product. As the lighter was fit for its ordinary purpose, it was merchantable; Appellee's contention to the contrary must fail. Accordingly, the Superior Court erred when it reversed the trial court's order granting summary judgment in favor of Appellants on the breach of warranty claim.[6]

The next issue we address is whether the Superior Court correctly determined that Appellee had adduced enough evidence regarding her punitive damages claim such that a jury issue was created.

 Our case law makes it clear that punitive damages are an "extreme remedy" available in only the most exceptional matters. *See Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 n. 14. (Pa.1985), *rev'd on other grounds sub nom., Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989). Punitive damages may be appropriately

---

5. No one asserts that the Cricket lighter was not fit for use by an adult to produce a flame.

6. We note that Appellants have strenuously argued that as this court has determined that Appellee's strict liability claim has failed, then that finding *de facto* precludes Appellee's implied breach of warranty claim. As one support for this claim, they assert that this court has already held that breach of warranty claims and strict liability claims are coterminous. Appellant's brief at 14 (citing *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848, 854 (1968)). Appellants misconstrue *Kassab*. The *Kassab* court did not announce the breathtakingly broad proposition that strict liability and breach of warranty claims are one and the same; rather, it stood for the narrower proposition that privity requirements should be abolished in both causes of action.

We also see no wisdom in adopting Appellants' reductionist reasoning. While there are similarities between the two causes of action, they are certainly not identical. For example, the implied warranty of merchantability requires that the product "pass without objection in the trade under the contract description...." 13 Pa.C.S. § 2314(b)(1). There is no corollary concept in a strict liability cause of action. We can see nothing positive to be gained by conflating two distinct causes of action with each other, and can foresee certain instances where such a crude rule of law would lead to erroneous results. Accordingly, we reject Appellants' invitation that we hold that strict liability and implied breach of warranty claims are coterminous.

awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either "the defendant's evil motive or his reckless indifference to the rights of others." *Martin*, 494 A.2d at 1096; *see also Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa.2005) (finding that punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in a fashion "so outrageous as to demonstrate willful, wanton or reckless conduct"). A defendant acts recklessly when "his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent." *Id.* at 771 (citation omitted). Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. *SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 705 (1991).[7] Rather, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to "intentional, willful, wanton or reckless conduct...." *Id.* at 704 (citation omitted).

What is clear from these cases is that there is a distinction between negligence and punitive damages claims, with a plaintiff being required to meet a far lesser burden to establish a negligence claim than that which is imposed in connection with a punitive damages claim. This distinction is an important one. Damages awarded in a negligence action compensate a plaintiff for his or her losses. Punitive dam-

---

7. In support of its claim that the Superior Court erred in its determination of this issue, Appellants imply that an action sounding in negligence can never support a claim for punitive damages. Thus, they conclude, as all of Appellee's remaining claims sound solely in negligence, she is precluded from presenting her punitive damages claim to the jury.

At the time Appellants filed their brief, they did not have the benefit of our recent decision in *Hutchison, supra.* In *Hutchison*, we rejected this very concept. *Hutchison*, 870 A.2d at 771. We stated that a "plaintiff in a case sounding in negligence [may undertake] the additional burden of attempting to prove, as a matter of damages, that the defendant's conduct not only was negligent but that the conduct was also outrageous, and warrants a response in the form of punitive damages." *Id.* at 772.

ages, in contrast, are not awarded to compensate the plaintiff for her damages but rather to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious. *G.J.D. by G.J.D. v. Johnson*, 552 Pa. 169, 713 A.2d 1127, 1129 (1998). Such a punishment should not be meted out to every defendant who is found to have acted negligently; rather, it should be reserved for those cases in which the defendant has acted in a particularly outrageous fashion.

We now turn to applying these principles to the matter *sub judice*. In support of her punitive damages claim, Appellee points to evidence she adduced showing that fires caused by children playing with butane lighters resulted in the deaths of 120 people per year, with an additional 750 people being injured in these fires. Expert Report and Affidavit of John O. Geremia, Ph.D. ("Geremia Affidavit") at 7 (citing the Consumer Product Safety Commission's report on child-resistant cigarette lighters, 53 Fed.Reg. 6833-01 (March 3, 1988)). Furthermore, evidence introduced by Appellee established that the estimated annual cost of child-play butane lighter fires to be between $300-375 million, or 60 to 75 cents per lighter sold. *Id.*

Appellee also relies on the deposition testimony of Rene Frigiere, Ph.D. ("Frigiere"), an employee of Appellants. Frigiere stated that Appellants knew of the dangers posed by young children playing with butane lighters. Deposition testimony of Rene Frigiere, 1/16/1998, at 68–70. Frigiere also admitted that Appellants could have placed child resistant features on their butane lighters; Appellee emphasizes that Frigiere indicated that Appellants chose not to place such features on their lighters unilaterally as they feared that their adult customers would opt not to buy such a product. *Id.* at 47. As noted by Appellee, Appellants came to this conclusion, in part, after test-marketing such a product in France where they discovered that their adult customers disliked the lighter with the child resistant features as such a lighter was more difficult to use. *Id.* at 118–20. Appellee focuses on this testimony as she apparently believes that Appellants' weighing

of financial factors is a resounding indictment of Appellants and assuredly shows that their conduct was outrageous.

As we found in *Phillips I*, Appellee had adduced enough evidence to create a jury question on whether Appellants acted negligently in selling a butane lighter which lacked child safety devices. *Phillips I*, 841 A.2d at 1008–10. Yet, the question with which we are now presented is not whether this evidence could support a finding of negligence. Rather, we must determine whether Appellee has adduced evidence sufficient to show that Appellants had an evil motive or were recklessly indifferent to the rights of others by creating a risk of harm which is substantially greater than that which is necessary to make his conduct negligent. *Martin*, 494 A.2d at 1097 n. 11.

It is readily apparent that the evidence does not show that Appellants had some evil motive such as intentionally manufacturing a lighter with the express wish that children misuse it and start fires. Thus, the narrow question here is whether Appellants acted with reckless indifference of a risk of harm which is substantially greater than that which is necessary to make their conduct negligent. After careful review, we conclude that Appellee has not shown that Appellants' conduct was so outrageous that that the risk of harm here can be said to be "substantially greater" than that which would be posed by negligent conduct.

We base our conclusion on many factors. First, the allegedly dangerous aspect of this product did not arise out of intended use of Appellants' product. Rather, it arose when the product was improperly utilized as a toy by a young child. While failure to mitigate and prevent a danger posed by misuses can give rise to liability in negligence, such a failure looks far less wanton than if the alleged danger arose in connection with the normal use of the product. Second, as acknowledged by both Appellee and Appellants, at the time this butane lighter was sold, it complied with all safety standards. Of course, compliance with safety standards does not, standing alone, automatically insulate a defendant from punitive damages; it is a factor to be considered in determining

whether punitive damages may be recovered. Finally, we flatly reject Appellee's assertion that Appellants' weighing of financial concerns in determining whether to incorporate additional safety features into its product on a unilateral basis establishes that Appellants acted wantonly. Rather, it shows simply that Appellants were considering all of the myriad elements that affect decisions a for-profit entity must make in manufacturing and marketing commercial products. Thus, we conclude that as a matter of law, Appellee has not adduced evidence sufficient to establish that Appellants' conduct was so outrageous so as to support an award of punitive damages.

For the foregoing reasons, we reverse the order of the Superior Court.

Justice CASTILLE did not participate in the consideration or decision of this case.

Justice NEWMAN files a concurring opinion.

Justice SAYLOR concurs in the result.

Justice NEWMAN, Concurring.

I join the Majority Opinion because I believe that Appellee failed to establish that Appellants committed a breach of warranty, as set forth in 13 Pa.C.S. § 2314. I further agree that punitive damages are not appropriate in this matter. The Majority correctly states:

As we found in [*Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000 (2003)] *Phillipsl*, Appellee had adduced enough evidence to create a jury question on whether Appellants acted negligently in selling a butane lighter which lacked child safety devices. *Phillips I*, 841 A.2d at 1008–10. Yet, the question with which we are now presented is not whether this evidence could support a finding of negligence. Rather, we must determine whether Appellee has adduced evidence sufficient to show that Appellants had an evil motive or were recklessly indifferent to the rights of others by creating a risk of harm which is substantially

greater that that which is necessary to make his conduct negligent.

*Martin* [*v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088,] ... 1097 n. 11 [(Pa.1985)].

*Phillips v. Cricket Lighters*, 35 WAP 2004, slip op. at 10. I write separately to note that I disagree with the conclusion of my colleagues that Appellee presented sufficient evidence to allow the jury to consider her claim for negligence. As I wrote in my Concurring and Dissenting Opinion in *Phillips I*:

> I respectfully disagree with the majority because I do not believe that we should allow the negligence causes of action to remain. Instead, this Court should have reinstated the Order of the trial court granting summary judgment to Appellants on Appellee's causes of action sounding in negligence. Fundamentally, I base this conclusion on my belief that the law of negligence simply does not require Appellants to pay damages for placing into the stream of commerce an object that was reasonably safe for its intended use and, in fact, operated as intended.

> Though I agree with the majority that Appellants had a duty to the mother, they fulfilled that duty by creating a lighter that was reasonably safe for its intended use. Appellants had a duty to manufacture a lighter that did not explode, leak fluid, or get unreasonably hot. They could not escape liability if their negligence caused the lighter to spontaneously spark or ignite when left unattended. However, the law of negligence does not establish a duty to make the lighter safe for the use of a two-year-old child. Similarly absent are any applicable statutory requirements that the lighter at issue bear a child-safety device. Although the United States Consumer Product Safety Commission promulgated regulations requiring that lighters subject to the provision "be resistant to successful operation by at least 85 percent" of the children tested, 16 C.F.R. § 1210.3, the lighter involved in the instant fire was manufactured before the July 12, 1994 effective date of the regulations, 16 C.F.R. § 1210.1. Consequently, there are no

regulations that create a duty to make the lighter safe for the use of the child in this case.

We do not require knife manufacturers to make knives safe for our children. We do not require the makers of matches to place them in special safety-boxes; we do not require drill makers or electric saw makers to have child safety locks; and we should not require lighters to be made safe for children.

> Were we to hold otherwise, the principle that we would have to adopt would permit virtually every manufacturer of a household tool or appliance to be found negligent. Knives, guns, blenders, saws, drills: the list of helpful tools perfectly safe in adult hands but dangerous in the hands of unsupervised children is endless.

*Kirk v. Hanes Corp. of N.C.*, 16 F.3d 705, 710 (6th Cir.1994) (quoting *Byler v. Scripto–Tokai Corp.*, 1991 WL 181749 at *6, 1991, U.S.App. Lexis 22277 at (6th Cir.1991) (unpublished)).

As parents, we recognize that we cannot safeguard our children from all the dangers of the world. We take reasonable action to protect them, but when those actions fail, we cannot blame others for our own lack of attention or for the dangers of the world in general. Lighters are potentially dangerous products. They are not to be used by children.

Manufacturers, distributors, and sellers have a duty to provide products that are not unreasonably dangerous when operated as intended by their intended users. They also have the duty to warn us of the dangers inherent in the proper operation of the product and to tell us, what we all know, that certain products should be kept away from children. They do not have a duty to make sure that a reasonably safe product, when used as intended, be safe when used by a two-year-old child. That is an unreasonable burden, which I would decline to impose on industry.

I am sympathetic to efforts to encourage lighter manufacturers to place child safety devices on lighters. However,

neither the law of negligence, nor any applicable regulatory or statutory provision required Appellants to do so.

*Id.* at 1023–1025 (footnote omitted). Because I do not believe that Appellee established a cause of action for compensatory damages, Appellee is precluded from seeking punitive damages in the instant matter.

While I disagree with the Majority regarding the presence of sufficient evidence with respect to Appellee's negligence claim, I am able to join the Opinion because I agree with its analysis regarding the breach of warranty issue, its discussion of the requirements for a claim for punitive damages, and its ultimate conclusion that Appellee is not entitled to punitive damages.