J-A04019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRIDGET ANDERSON, AS ASSIGNEE OF BIKE & BUILD, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BROWN & BROWN OF LEHIGH VALLEY, LP; HULL & COMPANY, INC. | : | |
| | : | |
| Appellee | : | No. 1468 EDA 2020 |

Appeal from the Order Entered June 9, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 170702999

BEFORE: KUNSELMAN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED JUNE 02, 2021**

Appellant, Bridget Anderson, as assignee of Bike & Build, Inc., appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted summary judgment in favor of Appellee, Brown & Brown of Lehigh Valley, LP.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The caption for this case includes an additional party, Hull & Company, Inc. ("Hull").  In her complaint, Appellant explained that Hull "served as a 'Wholesale Broker/Managing General Agent' for Bike & Build." (Complaint, filed 11/9/18, at 5; R.R. at 35a).  On January 9, 2020, the parties entered into a stipulation whereby they agreed to the dismissal of Appellant's claims against Hull without prejudice.  The parties also requested that the prothonotary amend the caption to omit Hull, however, the caption went unchanged.

Bike & Build is a non-profit entity that organizes service-oriented cycling trips throughout the United States to benefit affordable housing. In 2014, Bike & Build's insurance carrier ceased offering coverage for bike touring companies. Bike & Build obtained an interim policy and looked for new coverage. In the first months of 2015, Bike & Build discussed their insurance needs with Appellee, a broker who secures insurance coverage for businesses in Southeastern Pennsylvania. During these discussions, Bike & Build's Director of Operations and Outreach, Justin Villere, informed Appellee's representative, John Ahern, about Bike & Build's primary insurance needs:

> [Appellee's Counsel]: And what did you tell him about Bike & Build's risk exposures?
>
> [Mr. Villere]: The history that the organization has, the 2010 fatality, the 2011 fatality,[2] and then the various instance[s] that our riders are at risk for on the road, whether it is during cycling, falling themselves, an accident with other riders or an accident with the vehicle, or being on the build site where building with Habitat for Humanity or other affordable housing organizations that are building homes, so there is risk there, obviously, and so those are our two primary exposures, and so I … did go over those with him.

(Memorandum of Law in Support of Appellant's Response to Summary Judgment Motion, filed 2/6/20, at Exhibit A; R.R. at 486a).

_____

[2] Earlier in the deposition, Mr. Villere discussed the fact that many cyclists who participated in Bike & Build's trips suffered injuries, including two "trip leaders" who were killed. (Memorandum of Law in Support of Appellant's Response to Summary Judgment Motion, filed 2/6/20, at Exhibit A; R.R. at 482a).

On May 6, 2015, Bike & Build and Appellee entered into a broker services agreement. As part of the agreement, Appellee promised to assist Bike & Build "in preparing applications for coverages that Customer has indicated it wishes to procure through Broker." (Complaint at 4; R.R. at 34a). Thereafter, Appellee procured two insurance policies for Bike & Build, effective May 7, 2015 to May 7, 2016. Specifically, Appellee procured a commercial general liability policy with Nautilus Insurance Company ("Nautilus"), as well as a commercial excess liability policy with United Specialty Insurance Company ("United"). Both policies, however, contained a "participants exclusion," which did not cover personal injuries to Bike & Build's participating cyclists.

Although Appellee's employees were aware of the participants exclusion, Appellee did not recommend that Bike and Build obtain different insurance coverage. (*See* Complaint at 7-8; R.R. at 37a-38a). During a May 7, 2015 telephone call, Mr. Villere asked Mr. Ahern about the impact the participants exclusion would have on Bike & Build's coverage. Mr. Ahern assured Mr. Villere that the exclusion was standard, and "this wasn't something that we had to worry about…." (Memorandum of Law in Support of Appellant's Response to Summary Judgment Motion at Exhibit A; R.R. at 495a). Ultimately, Bike & Build purchased the Nautilus and United policies.

On July 30, 2015, Appellant participated as a cyclist in one of Bike & Build's cross-country trips. While traveling through Oklahoma, a motorist struck Appellant, and she sustained serious injuries. Bike & Build immediately

notified Appellee about the potential claims arising from the accident. Nevertheless, on August 17, 2015, Bike & Build's insurers issued a reservation of rights letter, informing Bike & Build that there may be no coverage for Appellant's potential claims. On June 6, 2016, the insurers formally denied coverage to Bike & Build. Appellant filed a negligence lawsuit against Bike & Build on June 15, 2016.

On September 7, 2016, Nautilus filed an action in federal court, seeking a declaration that its policy excluded coverage of claims arising from Appellant's lawsuit. United filed a crossclaim in the declaratory judgment action on October 24, 2016, also seeking a declaration that it need not defend or indemnify Bike & Build. The federal court subsequently granted summary judgment in favor of Nautilus and United.

In February 2017, Bike & Build resolved Appellant's claims by entering into a settlement and release. The agreement required the entry of a consent judgment for ten million dollars in Appellant's favor:

> **4. Entry of Consent Judgment.** Within five (5) days after her execution of this Settlement Agreement and Release, [Appellant] and Bike & Build shall enter into a consent judgment … for $10,000,000.00 and that will provide that the proceeds from any action or lawsuit against any of the entities named in ¶ 2, above, will be the sole recourse available to [Appellant] for the claims raised in the Action, and that [Appellant] will cause her counsel to mark the judgment satisfied upon [Appellant's] receipt of said proceeds.
>
> *    *    *

(Complaint at Exhibit 2; R.R. at 56a-57a). Bike & Build also assigned all of its

- 4 -

rights and claims against the insurance companies and Appellee to Appellant.[3]

(***See id.***; R.R. at 55a). In exchange, Appellant agreed not seek any recovery from Bike & Build:

> **3.** **Release.** [Appellant], her heirs, executors, administrators, and successors and assigns, by entering into this Settlement Agreement and Release, do hereby completely release, acquit, and forever discharge Bike & Build of and from any and all known or unknown past, present, or future claims, actions, causes of action, demands, lawsuits, obligations, liens, rights, damages, costs, claims for expense and/or compensation, claims for attorneys' fees and/or claims of any nature whatsoever, in law or equity, including but not limited to all the claims raised in or which could have been raised in the Action, which concern, relate, or refer in any way to Bike & Build based on alleged injuries or other harm experienced by [Appellant].

(***Id.***; R.R. at 56a).

On July 27, 2017, Appellant, as assignee of Bike & Build, commenced

---

[3] Our Supreme Court has summarized the relevant principles governing assignments as follows:

> An assignment is a transfer of property or a right from one person to another; unless qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee. Under the law of assignment, the assignee succeeds to no greater rights than those possessed by the assignor. An assignee's rights, however, are not inferior to those of the assignor. Ultimately, an assignee stands in the shoes of the assignor. Privity is not an issue in cases involving assignment claims; an assignee does not pursue a cause of action in its own right.

***Crawford Cent. School Dist. v. Commonwealth***, 585 Pa. 131, 136-37, 888 A.2d 616, 619-20 (2005) (internal citations and quotation marks omitted).

an action against Appellee by filing a writ of summons.[4]  Following a stay, Appellant filed her complaint on November 9, 2018.  Appellant alleged that Appellee breached its broker services agreement and carelessly obtained insurance policies that excluded the most significant risk faced by Bike & Build.

On January 6, 2020, Appellee moved for summary judgment on multiple grounds, including that Appellant had failed to provide sufficient evidence of damages.  Appellant filed an answer to the summary judgment motion on February 6, 2020.  Regarding damages, Appellant claimed that she demanded consequential damages from Appellee, which include "loss of good will damages (or prospective damages, as they are sometimes termed)." (Memorandum of Law in Support of Appellant's Response to Summary Judgment Motion at 22; R.R. at 452a).  Appellant explained that loss of good will claims "should not be barred *ab initio*, and that 'plaintiffs should be given an opportunity to set forth and attempt to prove their damages.'"  (*Id.*) Appellant also contended that the ten-million-dollar judgment against Bike & Build "will obviously impair [its] ability to borrow money, purchase and sell property or otherwise obtain credit unless and until the judgment is marked satisfied."  (*Id.* at 22-23; R.R. at 452a-53a).

On June 9, 2020, the trial court granted Appellee's summary judgment

---

[4] At that time, the federal court had yet to resolve the insurance companies' declaratory judgment action.  Consequently, the Court of Common Pleas stayed Appellant's case, pending resolution of the federal litigation.

motion and dismissed Appellant's complaint with prejudice. The court also entered judgment in favor of Appellee and against Appellant. Significantly, the court determined that Appellant "failed to present **any** evidence to establish that Bike & Build sustained an 'actual loss or damage' or 'resultant damage' from the negligence or breach of contract." (Order and Opinion, filed 6/9/20, at 2) (emphasis in original). Appellant timely filed a motion for reconsideration on June 19, 2020, which the court denied on July 7, 2020. On July 8, 2020, Appellant timely filed a notice of appeal. The court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises one issue for our review:

> Does the summary judgment record, viewed in the light most favorable to [Appellant], contain sufficient evidence concerning the bare existence of damages such that summary judgment was wrongly granted on that issue?

(Appellant's Brief at 2).

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of America*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations and quotation marks omitted). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.
>
> Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

"[A]rguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *Rohrer v. Pope*, 918 A.2d 122, 128 (Pa.Super. 2007) (quoting *Devine v. Hutt*, 863 A.2d 1160, 1169 (Pa.Super. 2004)).

> [A] non-moving party's failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal…. A decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not. This proposition is consistent with our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review.

*Id.* (quoting *Walsh v. Borczon*, 881 A.2d 1, 5 (Pa.Super. 2005) (emphasis omitted)).

On appeal, Appellant contends the summary judgment record "sufficed to permit a jury to award an amount of damages that was higher than zero." (Appellant's Brief at 15). Appellant claims her complaint alleged that Bike & Build suffered both financial and reputational injuries, and she sought actual and punitive damages. Regarding economic damages, "the record showed that Bike & Build had incurred specific out-of-pocket costs from [Appellee's] misconduct," including the payment of broker, policy, administrative, and insurance fees. (*Id.* at 15-16). Appellant complains that Bike & Build incurred other out-of-pocket losses by paying the premiums for "insurance policies that

did not respond to [Bike & Build's] requirements." (***Id.*** at 16).

Further, Appellant argues that Bike & Build suffered losses in conjunction with the settlement of Appellant's original suit. Appellant posits that Appellee's failure to obtain an insurance policy that would cover personal injury actions by injured cyclists "left Bike & Build to fend for itself after Nautilus disclaimed coverage and refused to provide a defense" for Appellant's initial lawsuit. (***Id.*** at 17). Appellant asserts Bike & Build was limited in its ability to defend against the suit, and it "was not well positioned to negotiate favorable settlement terms." (***Id.***) As a result, Bike & Build's settlement with Appellant did not include "a confidentiality agreement to protect its reputation, public standing, and goodwill." (***Id.***) Appellant emphasizes the fact that the ten-million-dollar consent judgment remains unsatisfied, which "destabilized Bike & Build's finances, including its ability to borrow money and obtain credit for its ongoing business operations."[5] (***Id.*** at 18). Appellant also avers that Bike & Build suffered non-economic losses due to negative publicity for its touring business, as well as loss of "standing in the community as a

_____

[5] In support of this proposition, Appellant cites to an excerpt from the deposition of Ronald Stepanek, a former Bike & Build employee. (Motion for Reconsideration, filed 6/19/20, at Exhibit D; R.R. at 798a-99a). Although Mr. Stepanek referenced certain "financial troubles" for Bike & Build, he did not mention the consent judgment or link Bike & Build's "troubles" to any aspect of Appellant's prior lawsuit.

- 10 -

trustworthy non-profit partner that could be responsible for its bike riders."[6] (*Id.* at 19).

In analyzing the record for evidence of damages, Appellant insists that the trial court improperly focused "on the fact that Bike & Build had no affirmative obligation to pay the $10 million judgment." (*Id.* at 21). Viewing all of the evidence in the light most favorable to Appellant as the non-moving party, Appellant maintains that the record contains evidence that would permit a jury to find some amount of compensable harm, "irrespective of whether the [consent] judgment itself must be paid" by Bike & Build. (*Id.* at 22). Appellant also suggests "the record would permit the conclusion that [Appellee's] failure to procure appropriate insurance coverage caused Bike & Build to settle [Appellant's original lawsuit] during the early stages of litigation on unfavorable terms." (*Id.*) Appellant concludes the court should not have granted summary judgment in favor of Appellee based upon a finding that Appellant did not present evidence to establish that Bike & Build suffered an actual loss or damages.

Appellee counters that Appellant failed to preserve many of her arguments regarding the damages Bike & Build suffered. Specifically, Appellee contends that Appellant's response to the summary judgment motion

---

[6] Moreover, Appellant contends a jury would be entitled to find negligence or breach of contract and award only nominal damages, and the record supports the request in her complaint for punitive damages. (*See* Appellant's Brief at 19-21).

- 11 -

raised two arguments regarding damages: 1) Bike & Build suffered adverse reputational effects due to Appellee's conduct; and 2) entry into the consent judgment resulted in damages to Bike & Build. Based upon this response, Appellee insists Appellant has waived the ability to argue that Bike & Build suffered any other type of damages.

Regarding the arguments Appellant preserved in her response, Appellee maintains Appellant did not produce evidence that Bike & Build suffered any damages. Appellee acknowledges that Appellant relies on a portion of Mr. Villere's deposition testimony to support the claim that Bike & Build suffered damages to its reputation. Appellee maintains this testimony, however, merely established that Bike & Build had "concerns" about bad publicity due to Appellant's accident. (Appellee's Brief at 22). To the extent Appellant also suggests that entry into the consent judgment resulted in damages to Bike & Build, Appellee emphasizes that Appellant entered into a settlement agreement that gave Bike & Build a full and unconditional release from all claims related to Appellant's accident. Under these circumstances, Appellee maintains the settlement and consent judgment had no financial impact on Bike & Build. Appellee concludes the court correctly granted summary judgment in light of Appellant's failure to produce evidence of damages. We agree with Appellee that no relief is due.

"Generally, to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of a legally recognized duty or

obligation of the defendant that is causally connected to actual damages suffered by the plaintiff." ***Scampone v. Highland Park Care Center, LLC***, 618 Pa. 363, 387, 57 A.3d 582, 596 (2012). "The burden of proving the existence of negligence rests upon the party who has asserted it." ***Schmoyer by Schmoyer v. Mexico Forge, Inc.***, 649 A.2d 705, 707 (Pa.Super. 1994).

"Damages awarded in a negligence action compensate a plaintiff for his or her losses." ***Phillips v. Cricket Lighters***, 584 Pa. 179, 189, 883 A.2d 439, 446 (2005). "The amount and items of pecuniary damage cannot be presumed but must be proved by the establishment of facts." ***Cohen v. Albert Einstein Medical Center, Northern Div.***, 592 A.2d 720, 729 (Pa.Super. 1991), *appeal denied*, 529 Pa. 644, 602 A.2d 855 (1992) (quoting ***Gordon v. Trovato***, 338 A.2d 653, 654 (Pa.Super. 1975)). ***See also Rizzo v. Haines***, 520 Pa. 484, 504-05, 555 A.2d 58, 68 (1989) (explaining mere breach of professional duty, causing only nominal damages, speculative harm, or threat of future harm—not yet realized—does not suffice to create cause of action for negligence); ***Miller Oral Surgery, Inc. v. Dinello***, 611 A.2d 232, 236 (Pa.Super. 1992), *appeal denied*, 533 Pa. 651, 624 A.2d 111 (1993) (providing general rule that damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond amount that evidence permits to be established with reasonable certainty).

"To support a claim for breach of contract, a plaintiff must allege: 1) the existence of a contract, including its essential terms; 2) a breach of a duty

imposed by the contract; and 3) resultant damage." ***Pittsburgh Const. Co. v. Griffith***, 834 A.2d 572, 580 (Pa.Super. 2003), *appeal denied*, 578 Pa. 701, 852 A.2d 313 (2004). "The purpose of damages in a breach of contract case is to return the parties to the position they would have been in but for the breach." ***Id.*** "To that end, the aggrieved party may recover all damages, provided '(1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.'" ***Ely v. Susquehanna Aquacultures, Inc.***, 130 A.3d 6, 10 (Pa.Super. 2015), *appeal denied*, 635 Pa. 764, 136 A.3d 982 (2016) (quoting ***Helpin v. Trustees of Univ. of Pennsylvania***, 608 Pa. 45, 50, 10 A.3d 267, 270 (2010)).

"In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss." ***Logan v. Mirror Printing Co. of Altoona, Pa.***, 600 A.2d 225, 226 (Pa.Super. 1991).

> The Superior Court has observed that "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages…. Thus, damages are speculative only if the uncertainty concerns the **fact** of damages rather than the **amount**."

***Id.*** at 227 (quoting ***Pashak v. Barish***, 450 A.2d 67, 69 (Pa.Super. 1982) (emphasis in original)).

- 14 -

Instantly, Appellee requested summary judgment due to, among other things, Appellant's failure to establish that Bike & Build suffered a compensable loss:

> The record in this matter is devoid of any evidence that Bike & Build: (1) incurred any financial loss as a result of [Appellee's] purported negligence, or (2) had any exposure to rider claims that necessitated insurance coverage or otherwise could have caused a loss, because [Appellant] waived all of her claims against Bike & Build.
>
> * * *
>
> Stated simply, Bike & Build does not have any damages caused by [Appellee]. Because [Appellant] cannot satisfy this required element to support her negligence claim as Bike & Build's assignee, [Appellee] is entitled to summary judgment.

(Memorandum of Law in Support of Summary Judgment Motion, filed 1/6/20, at 17-18; R.R. at 118a-19a).

In response, Appellant claimed that Appellee ignored her demand for consequential damages, which include damages for loss of good will. (**See** Memorandum of Law in Support of Appellant's Response to Summary Judgment Motion at 22; R.R. at 452a). Appellant also alleged that the ten-million-dollar consent judgment impaired Bike & Build's ability to conduct business. (**Id.** at 22-23; R.R. at 452a-453a). Appellant, however, did not advance arguments regarding the propriety of specific out-of-pocket costs related to Appellee's misconduct, such as the payment of broker, policy, administrative, and insurance fees. Consequently, we limit our review to those arguments Appellant included in her response to the summary judgment

- 15 -

motion.[7] **See Rohrer, supra**.

Following the submission of Appellee's summary judgment motion and Appellant's response, the trial court determined that Appellant failed to present evidence to establish that Bike & Build sustained an actual loss or damages. The court analyzed the deposition testimony from Mr. Villere, which Appellant relies on to support the assertion that Bike & Build suffered a loss of good will. The relevant portion of Mr. Villere's deposition provides as follows:

> [Appellee's Counsel]: And Bike & Build—was Bike & Build concerned about how much it would cost to defend [Appellant's] lawsuit?
>
> [Appellant's Counsel]: Objection to form. You can answer.
>
> [Mr. Villere]: Among all of the concerns related to the lawsuit, that would have been one of them.
>
> [Appellee's Counsel]: And what other concerns did Bike & Build have about the lawsuit?
>
> [Mr. Villere]: How it would impact upcoming trips, of course, publicity, outcome.

---

[7] We acknowledge that Appellant's response to the summary judgment motion included argument on the propriety of punitive damages. (**See** Memorandum of Law in Support of Appellant's Response to Summary Judgment Motion at 31-34; R.R. at 461a-64a). Nevertheless, "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract[.]" **Barnes v. Gorman**, 536 U.S. 181, 187, 122 S.Ct. 2097, 2102, 153 L.Ed.2d 230, ___ (2002). Moreover, "If no cause of action exists, then no independent action exists for a claim of punitive damages since punitive damages is only an element of damages." **DiGregorio v. Keystone Health Plan East**, 840 A.2d 361, 370 (Pa.Super. 2003) (quoting **Kirkbride v. Lisbon Contractors, Inc.**, 521 Pa. 97, 101, 555 A.2d 800, 802 (1989)).

[Appellee's Counsel]:     Any other concerns?

[Mr. Villere]:     I don't recall any others at the particular time.

(Memorandum of Law in Support of Appellant's Response to Summary Judgment Motion at Exhibit A; R.R. at 512a).

Likewise, Mr. Villere also discussed the practical consequences of Bike & Build's entry into the settlement agreement:

[Appellee's Counsel]:     Under the terms of this settlement agreement, Bike & Build was not going to have responsibility to pay the $10 million to [Appellant]; correct?

[Mr. Villere]:     From what I understand of this wording, correct.

[Appellee's Counsel]:     Any recovery of that $10 million number would come either from the insurance carriers or from [Appellee]; correct?

[Mr. Villere]:     From what I understand, yes.

[Appellee's Counsel]:     And there was no finding made by any court after the presentation of evidence that Bike & Build was responsible to pay $10 million in damages; correct?

[Appellant's Counsel]:     Objection to the form.  You can answer.

[Mr. Villere]:     That's correct.

(*Id.*; R.R. at 510a).

In analyzing the summary judgment record, the trial court carefully scrutinized Mr. Villere's testimony:

Mr.  Villere  never  testified  how  [Appellant's]  litigation

- 17 -

actually affected or would affect Bike & Build. He only said that the officers of Bike & Build were concerned about publicity about the litigation; but failed to identify the publicity at issue and how it actually affected Bike & Build.

Mr. Villere's testimony was too speculative because it did not identify specific damages flowing from [Appellant's] litigation.

\* \* \*

[Appellant] next asserted that [Appellee's] conduct caused Bike & Build to incur a $10 million consent judgment against itself in favor of [Appellant]. [Appellant] baldly alleges that such a substantial judgment will impair Bike & Build's ability to borrow money, purchase and sell property, or otherwise obtain credit unless and until the judgment is marked "satisfied." However, [Appellant] failed to cite to any actual **evidence** in the record that supports any of these speculative claims. [Appellant] did not provide any affidavits explaining Bike & Build's actual attempts to borrow money, obtain credit, or purchase or sell property that were hampered by the judgment. [Appellant] did not present expert testimony explaining the effect of the judgment on Bike & Build's ability to borrow money, obtain credit, or purchase or sell property.

These "facts" are not facts; they are merely argument by [Appellant's] attorney without any evidentiary support in the summary judgment record.

\* \* \*

Mr. Villere testified that under the terms of the settlement agreement between [Appellant] and Bike & Build, Bike & Build would not have to pay any part of the $10 million consent judgment. The sole sources for the $10 million were [Appellee] and the two insurance carriers who had produced policies for Bike & Build. There has been no finding by any court that Bike & Build was responsible to pay the $10 million judgment.

(Order and Opinion at 3-5) (internal citations and footnote omitted) (emphasis

in original).

The court concluded that Appellant failed to present evidence demonstrating that Bike & Build sustained actual loss or damages. The record supports the court's determination. Here, Mr. Villere testified that Bike & Build had "concerns" about Appellant's lawsuit. Such concerns do not equate to quantifiable damages. *See Logan, supra*; *Cohen, supra*. Further, the record is devoid of evidence of negative consequences of Bike & Build's entry into the settlement agreement. While Appellant attempts to characterize the settlement as having "unfavorable" terms that were effectively forced upon Bike & Build, the settlement provided Bike & Build with a mechanism to end its involvement with Appellant's claims without having to pay for a judgment. On this record, we agree that any suggestion of damages to Bike & Build is too speculative to support a cause of action. *See Logan, supra*; *Cohen, supra*. Absent more, the court did not abuse its discretion or commit an error of law by entering summary judgment in favor of Appellee. *See Mee, supra*. Accordingly, we affirm.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 6/2/2021*